**NORTHERN ILLINOIS GAS COMPANY**

v.

**The UNITED STATES.**

**No. 631–85T.**

United States Claims Court.

March 25, 1987.

Edward C. Rustigan, Chicago, Ill., for plaintiff.

Ellen K. McGee, Washington, D.C., with whom was Asst. Atty. Gen. Roger M. Olsen, for defendant.

## OPINION

YOCK, Judge.

This tax refund suit is currently before the Court on plaintiff's Motion for Partial Summary Judgment and defendant's Cross-Motion for Summary Judgment. Plaintiff claims that it was erroneously and illegally assessed federal highway use taxes for the period July 1, 1977 through June 30, 1982. Defendant denies the plaintiff's allegation and argues that the Government is entitled to judgment as a matter of law.

For the reasons discussed herein, plaintiff's motion is denied, defendant's motion is granted and judgment is to be entered in favor of defendant as a matter of law.

### Facts

The plaintiff, Northern Illinois Gas Company (NI–Gas) owns a number of all-purpose utility trucks. Each of these vehicles is equipped with a pintle hook [1] suitable for towing a heavy-duty trailer.

Plaintiff asserts that it is entitled to a refund for alleged overpayments of federal highway use taxes for taxable periods beginning on July 1, 1977 and ending on June 30, 1982. In its complaint, filed October 25, 1985, plaintiff states that the Internal Revenue Service classified plaintiff's pintle hook-equipped trucks as "truck trailer combinations," subject to the federal highway use tax, rather than "single unit vehicles" which are exempt from taxation. Such classification was erroneous, according to plaintiff, because, notwithstanding the existence of a pintle hook, the trucks were not customarily used with trailers. As a

result, plaintiff contends that the tax was illegally assessed.

Plaintiff filed administrative claims for refund of the amount of tax allegedly overpaid. Plaintiff instituted its action in this Court at least six months after filing its claim for refund and within two years of the date of defendant's disallowance of such claims as required by 26 U.S.C. § 6532(a) (1976). Plaintiff seeks a refund of the amounts paid, totaling approximately $179,560, plus appropriate interest.

The original and only issue raised in plaintiff's complaint, whether the interpretation given by the IRS of its regulation, 26 C.F.R. § 41.4482(b)–1(d), and in Rev.Rul. 294, 1976–2 C.B. 364, conflicted with the statutory language of 26 U.S.C. § 4482 (1976), was also raised in claims for refunds filed in this Court by Minnesota Power and Light Company, Kansas City Power and Light Company and the L.E. Myers Company.

In October 1983, the Government moved for summary judgment against Minnesota Power. On November 21, 1984, this Court issued opinions in the three earlier filed cases ruling in favor of the taxpayers on the controlling issues of law. *See Minnesota Power and Light Co. v. United States*, 6 Cl.Ct. 558 (1984). However, on January 8, 1986, the Court of Appeals for the Federal Circuit reversed the decision of the Claims Court and held for the Government on the controlling legal issue. Specifically, the Federal Circuit held that the IRS's regulatory and revenue ruling interpretation of 26 U.S.C. § 4482(b) (1976) was harmonious with the statute itself. *See Minnesota Power and Light Co. v. United States*, 782 F.2d 167 (Fed.Cir.1986).[2]

Apparently realizing that the Federal Circuit's *Minnesota Power* decision is binding precedent on this Court, plaintiff filed a

---

**1.** A pintle hook is a mechanism that can be attached to the back of a truck or other motor vehicle which will enable that vehicle to pull a trailer or other piece of equipment if the other piece of equipment is equipped with an eye that will go into the hook.

**2.** The plaintiffs in the two related cases decided at the same time in the Claims Court as the *Minnesota Power* case, *L.E. Myers Co. v. United States*, Docket No. 362–79T and *Kansas City Power & Light Co. v. United States*, Docket No. 230–82T, were not permitted to intervene in the *Minnesota Power* appeal, but were permitted to file briefs as *amici curiae*.

motion for partial summary judgment asserting a different theory of recovery than that originally advanced in its complaint.

In its motion, filed June 13, 1986, plaintiff claims that Rev.Rul. 76–294, 1976–2 C.B. 364, is in actuality a "legislative," rather than an interpretive rule. As such, plaintiff contends that it is invalid because it was not adopted in accordance with the notice and comment procedures required by the Administrative Procedure Act of 1946, 5 U.S.C. §§ 551 *et seq.* (1976) (APA or Act).

The Government raises four arguments countering plaintiff's claim and in support of its cross-motion for summary judgment. First, defendant correctly states that plaintiff raised this very argument, and lost, once before in an earlier district court case later affirmed by the United States Court of Appeals for the Seventh Circuit. *See Northern Illinois Gas Co. v. United States*, 743 F.2d 539 (7th Cir.1984), *aff'g*, 554 F.Supp. 371 (1983), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985) (NI–Gas I). Defendant asserts that plaintiff, as a result, is collaterally estopped from relitigating the issue in this Court. Second, defendant argues that plaintiff's Administrative Procedure Act claim is essentially the same as that determined, in favor of the Government, by the Federal Circuit in *Minnesota Power*. Therefore, plaintiff is bound by the doctrine of *stare decisis*. Defendant's third argument raises the "variance doctrine." The Government contends that the plaintiff is precluded from advancing its APA claim because plaintiff failed to raise the argument in its claims for refund filed with the Internal Revenue Service. Finally, the Government asserts that, in any event, plaintiff's claim fails on the merits. Defendant asserts on the merits that Rev.Rul. 76–294, 1976–2 C.B. 364 is not a legislative rule. Rather, it is merely a permissible interpretation of 26 U.S.C. § 4482 (1976) not subject to the provisions of the Administrative Procedure Act. There being no violation of the Act, the federal highway use tax was properly assessed against plaintiff.

## *Discussion*
### A. Collateral Estoppel

When an issue has been "actually and necessarily determined" by a court of competent jurisdiction, collateral estoppel will preclude the parties to the prior suit from relitigating that issue in any subsequent litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). This principle applies with equal weight in tax litigation. *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). Collateral estoppel operates to "preclude parties from contesting matters that they have had a full and fair opportunity to litigate [which, in turn,] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). Additionally, in the tax arena, collateral estoppel relieves both the "government and the taxpayer of 'redundant litigation of the identical question of the statute's application to the taxpayer's status.'" *Commissioner v. Sunnen, supra*, 333 U.S. at 599, 68 S.Ct. at 720 (quoting *Tait v. Western Md. Ry. Co.*, 289 U.S. 620, 624, 53 S.Ct. 706, 707, 77 L.Ed. 1405 (1933)). To determine whether collateral estoppel should be applied in the instant case requires a determination of (1) whether the issue presented in this action is "in substance the same" as that resolved in the prior litigation; (2) whether "controlling facts or legal principles have changed significantly" since the prior judgment; and (3) whether any special circumstances exist so as to "warrant an exception to the normal rules of preclusion." *Montana v. United States, supra*, 440 U.S. at 155, 99 S.Ct. at 975. *See also Commissioner v. Sunnen, supra*, 333 U.S. at 599–600, 68 S.Ct. at 720–21; *Furst v. United States*, 230 Ct.Cl. 375, 385, 678 F.2d 147, 154 (1982); *Southwestern Life Ins. Co. v. United States*, 9 Cl.Ct. 102, 106 (1985).

Plaintiff contends that collateral estoppel should not be applied because "this case

arises out of different, although similar, factual events: the tax liability in dispute in many cases arose from the use of different trucks, by different people at different times, on different highways. The tax periods at issue in this case are 1977–1982, whereas the tax periods at issue in *NI–Gas I* were 1971–1974." Thus, according to the plaintiff, the separable facts doctrine applies and renders the collateral estoppel bar inappropriate.

The separable facts doctrine provides that:

> [I]f a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit.

*Commissioner v. Sunnen, supra,* 333 U.S. at 598, 68 S.Ct. at 719.

While at first glance plaintiff's argument appears persuasive, it does not withstand closer analysis.

■ Although NI–Gas is correct in asserting that there are factual differences between the earlier suit and that currently before this Court, plaintiff fails to recognize that neither the change in trucks, peo-

ple, highways nor tax years involved had any bearing on the Seventh Circuit's analysis of whether Rev.Rul. 76–294 violated the APA, thus the factual differences highlighted by plaintiff are not relevant to this Court's determination of whether collateral estoppel should be applied. *See Furst v. United States, supra,* 230 Ct.Cl. at 385, 678 F.2d at 154 (1982) (collateral estoppel will not lie where there has been a subsequent modification of the *significant* facts).[3] What is relevant, however, is whether plaintiff's APA claim was actually presented and decided by the Seventh Circuit. This Court believes that it was.

The Seventh Circuit stated:

> The appellant [NI–Gas] also challenges the validity of Revenue Ruling 76–294 on procedural grounds. Section 553 of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1982), establishes a set of procedural requirements applicable to agency rulemaking that is legislative in nature. The appellant argues that "the Internal Revenue Service's attempt to impose its 'equipped for use in combinations' rule upon NI–Gas constitutes an act of legislative rulemaking which is subject to the Administrative Procedure Act." Appellant's Brief at 30. The flaw in this argument is that it was the Secretary of the Treasury, not the IRS, who promulgated the "equipped for use" standard, and it is undisputed that the Secretary did comply with the APA in so doing. The IRS merely ruled that utility

---

**3.** It should be noted that, in any event, plaintiff itself recognizes that any factual differences between the tax years involved are insignificant. For example, defendant requested, through interrogatories, that plaintiff provide information regarding the vehicles involved in the instant case. Rather than respond directly to defendant's interrogatories plaintiff submitted a proposed stipulation of facts. This document stated:

"4. NI–Gas previously has litigated the legal issues present at this case, for its tax periods from July 1, 1971 to June 30, 1974 in *Northern Illinois Gas Co. v. United States,* 743 F.2d 539 (7th Cir.1984), *cert. denied,* [472] U.S. [1027, 105 S.Ct. 3501, 87 L.Ed.2d 632] (1985). In that case, the majority of the Seventh Circuit panel summarized the facts relevant for its decision, at 743 F.2d 540, as follows:

> The appellant owns a number of utility trucks that are equipped with pintle hooks[1] suitable for towing heavy trailers.
>
> [1] A pintle hook is a mechanism that can be attached to the back of a motor vehicle enabling it to pull a trailer or other piece of equipment equipped with an eye within which the hook will fit.

*The Seventh Circuit's summary of facts also is accurate with respect to the all-purpose utility trucks at issue in this case* which were in NI–Gas' fleet during the tax periods at issue, namely July 1, 1977 to June 30, 1982. However, the trucks in NI–Gas' fleet for the period July 1, 1977 to June 30, 1982 were not identical to the trucks in NI–Gas' fleet during the earlier period, July 1, 1971 to June 30, 1974. Between these two periods, some trucks were retired from service, and new trucks were added to the fleet." (Emphasis supplied.)

trucks with pintle hooks qualified as "equipped for use" in combination with trailers. *This clearly was interpretative rulemaking, not legislative rulemaking, and thus it was exempt from the procedural requirements of § 553 of the APA. See generally Wing v. Commissioner,* 81 T.C. 17, 26–28 (1983) ("revenue rulings ... have been held to be the classic example of an interpretative ruling and exempt from the notice and comment provisions of the APA section 553").

*Northern Illinois Gas Co. v. United States, supra,* 743 F.2d 539, 541 n. 3 (1984).

Additionally, in light of its holding that the promulgation of Treas.Reg. § 41.-4482(d)(3) was a reasonable exercise of the Secretary of the Treasury's discretion the Seventh Circuit held that Rev.Rul. 76–294 also was valid.

The issue raised by plaintiff in the present litigation is precisely the issue decided by the Seventh Circuit in the above paragraph. Therefore, absent a significant change in the applicable legal principles or special circumstances which would warrant an exception to the general rule; collateral estoppel will operate to preclude plaintiff from relitigating the APA issue. *Accord Union Carbide Corp. v. Commissioner,* 671 F.2d 67 (2d Cir.1982).

Plaintiff claims that two recent cases prove that there has been a change in the legal environment so as to overcome collateral estoppel. Plaintiff cites *Woods Investment Co. v. Commissioner,* 85 T.C. 274 (1985) and *Watson Land Co. v. Commissioner,* 799 F.2d 571 (9th Cir.1986) in support of its proposition.

These cases attempted to resolve the issue of whether the Internal Revenue Service can *change* the law set forth in its regulations through *technical advice memoranda* and *nationally coordinated audit positions.* The cases cited by NI–Gas are unrelated to the APA issue extant in the present case and, as a result, do not constitute a "change in the legal climate" sufficient to render *NI–Gas I* inconsistent with prevailing doctrine. *See Montana v. United States, supra,* 440 U.S. at 161, 99

S.Ct. at 977; *Commissioner v. Sunnen, supra,* 330 U.S. at 599, 68 S.Ct. at 720.

Plaintiff's final argument with respect to the collateral estoppel issue is that special circumstances exist so as to make the application of collateral estoppel inappropriate. NI–Gas contends that because its motion "is brought in tandem with the identical argument by the L.E. Myers Company, the application of collateral estoppel to NI–Gas would result in disuniform treatment of identically situated taxpayers."

As will be discussed later in this opinion, NI–Gas' action fails on the merits as well as on procedural grounds. Therefore, the possibility of inconsistent decisions is nonexistent. *See Furst v. United States, supra,* 230 Ct.Cl. at 387, 678 F.2d at 155.

For the reasons discussed above, it is clear that collateral estoppel should be applied so as to preclude plaintiff's action in this Court. However, because there has been a flurry of litigation concerning the pintle hook matter and so that the issue is resolved once and for all, the Court believes it is important that each alternative argument raised by defendant be addressed.

### B. *Stare Decisis*

The Government's second argument against plaintiff's claim in this Court is that the principle of *stare decisis* precludes NI–Gas from maintaining its action here. Defendant claims that although the Federal Circuit's opinion in *Minnesota Power* did not directly address the issue here at hand, it did reject "the essential premise of plaintiff's argument, *i.e.,* has found no legal error by the IRS in any departure from prior practice that may have been entailed in Rev.Rul. 76–294."

Plaintiff, on the other hand, states that the Federal Circuit did not decide the issue of whether the Rev.Rul. 76–294 is a legislative rule. "The parties did not make this argument [and] [t]here is no mention of the Administrative Procedure Act in the opinion or any of the briefs."

The doctrine of *stare decisis* permits a court to recognize a rule of law enunciated in an earlier case provided the facts and

issues involved in both cases are similar. *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Duncan v. Theis,* 613 F.2d 305 (Temp.Emer.Ct.App. 1979); *Ben Constr. Corp. v. United States,* 160 Ct.Cl. 604, 312 F.2d 781 (1963). Furthermore, the doctrine of *stare decisis* is particularly weighty in cases of what are essentially statutory interpretation; "[f]or in such cases Congress may cure any error made by the courts." *Cottrell v. Commissioner,* 628 F.2d 1127, 1131 (8th Cir.1980).

Although plaintiff is correct in its assertion that the Federal Circuit did not specifically mention the Administrative Procedure Act, it is incorrect in its conclusion that the doctrine of *stare decisis* is therefore inapplicable. The basic premise of plaintiff's current APA argument is that Rev.Rul. 76–294 represented a complete departure from prior IRS regulations and practice and, as such, constituted a legislative rather than an interpretive rule. Since the offending Revenue Ruling was, in essence, a legislative rule, and was not adopted in accordance with the notice and comment procedure required by the APA, the Ruling itself is void, and thus unenforceable by the Government in this case.

█ The basic premise in the plaintiff's current argument is the same as that advanced by the plaintiff in *Minnesota Power, supra,* and rejected by the Federal Circuit. The basic premise rejected is that Rev.Rul. 76–294 departed from the highway use tax statute and the applicable regulations so substantially as to be inconsistent with them, and consequently void. Although the APA "label" was not attached to the arguments presented in *Minnesota Power,* the basic premises of the issue are so similar that this Court believes that the essence of the plaintiff's APA argument was addressed and decided by the Federal Circuit.

Moreover, the Federal Circuit may well have directly addressed the legislative rule issue, without using the APA label. For instance, in *Minnesota Power, supra,* 782 F.2d at 169, the Federal Circuit stated:

In essence, the Claims Court held that the interpretation given by IRS to its

regulation, that is, the Schedule of taxable gross weights, conflicted with the statute. Therefore, the Claims Court nullified IRS's interpretation [4] and gave the regulatory Schedule a different interpretation in harmony with the Claims Court's interpretation of the statute.

---

[4] The IRS interpretation is set forth in Rev. Pub. [sic] 76–294, 1976, 2 Cum.Bull. 364. The Claims Court invalidated this ruling.

Later, at page 170, the court opined:

Section 4482(b), above quoted, confers upon the Secretary of the Treasury broad authority to promulgate regulations establishing classifications of vehicles and to assign to such classes a weight value that would apply to all vehicles in each class. As the Supreme Court has made clear, the interpretation of a statute by the agency charged with its administration is entitled to deference. The agency's regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes, and should not be overruled except for weighty reasons." * * * *This is particularly true where the agency has given its interpretation [Rev.Rul. 76-294] in connection with legislative regulations, such as those before us.*

*Minnesota Power and Light Co., supra,* 782 F.2d at 170–71 (citations omitted and emphasis added).

Finally, the court concluded with the following remarks at page 173.

In reaching the conclusion that the Secretary's interpretation is harmonious with the statute, we have taken into consideration taxpayer's arguments with respect to (1) the effect of the amendment of the statute in 1982 and (2) the Secretary's asserted change of interpretation. While we did not find either argument persuasive, each does warrant some discussion.

\*　　\*　　\*　　\*　　\*　　\*

The asserted change in official position is not unequivocally established. The facts are detailed in the Claims Court decision, and we see no need to repeat them here. Assuming it were true that

the change occurred, the question remains whether the later interpretation violates the statute. In *Dickman v. Commissioner of Internal Revenue*, 465 U.S. 330, 343, 104 S.Ct. 1086, 1094, 79 L.Ed.2d 343 (1984), the Supreme Court held:

> Even accepting the notion that the Commissioner's present position represents a departure from prior administrative practice, which is by no means certain, it is well established that the Commissioner may change an earlier interpretation of the law, even if such a change is made retroactive in effect. This rule applies even though a taxpayer may have relied to his detriment upon the Commissioner's prior position. The Commissioner is under no duty to assert a particular position as soon as the statute authorizes such an interpretation. Accordingly, petitioners' "taxpayer reliance" argument is unavailing. [Footnotes and citations omitted.]

We believe our decision here is in accord with the Supreme Court's guidelines. *Accord, Northern Illinois Gas Co.*, 743 F.2d at 542 n. 5.

### III.

Having considered the Secretary's interpretation vis-a-vis the statutory framework, we conclude that the Claims Court erred in holding the equipped for use regulation, as interpreted by the Secretary, invalid.

In view of the above discussion, this Court believes that the doctrine of *stare decisis* is for application here.

### C. Variance Doctrine

Even if the Court is incorrect, however, in its application of *stare decisis* to the present controversy, the plaintiff would nevertheless run headlong into the brick wall of the variance doctrine.

Section 7422(a) of the Internal Revenue Code provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax * * * until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (1976). Further, Treas. Reg. § 301.6402–2(b)(1) adds:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.

Treas.Reg. § 301.6402–2(b)(1) (1976).

It is now axiomatic that the variance doctrine will preclude a refund suit in any court if it rests on grounds different from those stated in the administrative claim for refund filed with the IRS. *Ottawa Silica Co. v. United States*, 699 F.2d 1124 (Fed. Cir.1983); *Burlington Northern, Inc. v. United States*, 231 Ct.Cl. 222, 684 F.2d 866 (1982); *Strick Corp. v. United States*, 223 Ct.Cl. 262, 625 F.2d 1001 (1980); *Union Carbide Corp. v. United States*, 222 Ct.Cl. 75, 612 F.2d 558 (1979); *Cook v. United States*, 220 Ct.Cl. 76, 599 F.2d 400 (1979); *Pinckes v. United States*, 7 Cl.Ct. 570 (1985).

The policy behind the variance doctrine is:

> [T]o prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination. In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend.

*Union Pacific R.R. Co. v. United States*, 182 Ct.Cl. 103, 109, 389 F.2d 437, 442 (1968) (citations omitted).

The statement attached to each administrative claim for refund filed by NI–Gas, an example of which was attached to plaintiff's complaint, reads as follows:

STATEMENT ATTACHED TO AND MADE A PART OF CLAIM FORM 843 OF NORTHERN ILLINOIS GAS COMPANY

This claim for refund is submitted with respect to taxes assessed pursuant to section 4481(a) of the Internal Revenue Code of 1954 ("Code") * * *. Taxpayer has paid a tax * * * and interest * * * for the period involved. It is the taxpayer's position that this amount was incorrectly paid and is subject to refund.

The taxpayer takes the position that its two-axled utility vehicles equipped with a pintle hook are taxable as single units. Therefore, any such vehicle with an actual unloaded weight of less than 13,000 pounds is not subject to tax * * *.

Rev.Rul. 57–547 states:

It is held that a utility truck of a type designed for transportation of personnel, tools, and equipment, such as those used by public utility companies in the maintenance and installation of poles, lines, pipe conduits, etc., which is equipped with a pintle hook or similar coupling device for pulling a pipe or pole dolly, tool or equipment trailer, or other similar lightweight trailer, is not "equipped for use in combinations." Rather, it is classed as a "single unit" vehicle for purposes of determining its taxable gross weight under the tax schedule set forth in Section 41.-4482(b)–1(c) of the regulations. Accordingly, where a truck of the type described above does not have an actual unloaded weight fully equipped for service of 13,000 pounds or more, it will not be subject to the tax.

In Rev.Rul. 76–294, 1976–2 C.B. 364, the Internal Revenue Service modified Rev.Rul. 57–547 so that a utility truck equipped with a pintle hook or similar coupling device suitable for towing a trailer with two or more axles or a one-axled trailer with a gross weight of 6,000 pounds or more, is considered a vehicle equipped for use in combinations and not a single unit. It is the position of the taxpayer that Rev.Rul. 76–294 does not

correctly interpret Sections 4481 and 4482 of the Code as applied to the vehicles involved.[4]

▮ This statement attached to plaintiff's administrative claims for refund clearly is devoid of any mention of the "legislative rule" or Administrative Procedure Act issue. Thus, NI-Gas' claim in this Court is at variance with the claims presented previously to the IRS. Resolution of the Administrative Procedure Act issue in this Court would require consideration of different factors than those assessed by the IRS with regard to the original, administrative claims. For example, in its cross-motion for summary judgment, defendant correctly points out that:

[T]o investigate plaintiff's original claims, the Internal Revenue Service needed only to consider the language of the Revenue Ruling and statutes in question. But had the plaintiff alerted the Service to a claim under the APA, the Service would have been required to engage in a wholly different inquiry as to whether the APA applied, and, to the extent the APA was found applicable, whether it had been complied with. Thus, * * * plaintiff is here attempting to assert a new legal ground [of recovery] predicated on new and additional facts.

To allow plaintiff to pursue its present claim would be manifestly unfair to the Government. Therefore, plaintiff's action in this Court also fails by application of the variance doctrine.

### D. Merits of the APA Issue

Defendant's fourth and final argument is that even if plaintiff's action did not fail based on procedural grounds, it fails on the merits. This Court agrees.

Both parties correctly note that the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.* (1976), governs legislative "rule making" practices and sets forth certain procedural requirements which must be met in order for the "rule" to be validly promulgated. Specifically, (1) general no-

---

**4.** Plaintiff stated in its complaint that the statement "Attached To And Made A Part Of Claim Form 843" was identical to those filed for each year at issue in the present case.

tice of proposed rulemaking must be published in the Federal Register, (2) interested persons must be afforded an opportunity to submit written comments or orally present their views, and (3) publication of the final rule, together with a concise statement of its basis and purpose must occur not less than 30 days before the rule's effective date. 5 U.S.C. § 553(b)–(d) (1976). However, "interpretive rules [and] general statements of policy," are specifically exempted from the above noted requirements. 5 U.S.C. § 553(b)(3)(A) (1976).

Thus, the pivotal issue to be decided is whether Rev.Rul. 76–294, "the equipped for use rule," is a legislative or an interpretive rule.

Plaintiff argues that it is a legislative rule, and as such is void for failure to be promulgated in accordance with the APA. NI–Gas bases its argument on the fact that Congress expressly delegated rulemaking authority to the Secretary of the Treasury to prescribe regulations to determine "taxable gross weight" under the highway use tax in 26 U.S.C. § 4482(b) (1976). This statute provides:

> Taxable gross weight shall be determined under regulations prescribed by the Secretary (which regulations may include formulas or other methods for determining the taxable gross weight of vehicles by classes, specifications, or otherwise).

This unambiguous delegation of authority is also clear in the congressional committee reports, which state that "[t]axable gross weight is to be determined in all cases in the manner provided in regulations prescribed by the Secretary or his delegate." H.R.Rep. No. 2022, 84th Cong. 2d Sess. 62 (1956); S.Rep. No. 2054, 84th Cong. 2d Sess. 29 (1956). As a result, plaintiff contends Rev.Rul. 76–294, which announced the "equipped for use rule," constitutes invalid, legislative rulemaking.

The flaw with plaintiff's argument is that the "equipped for use rule" was originally enunciated by the Secretary of the Treasury by regulation in the Use Tax Schedule appearing in Treas.Reg. § 41.-4482(b)–1(d), and not, as plaintiff contends,

by the IRS in Rev.Rul. 76–294. Notice of the proposed rulemaking, *i.e.*, the amendment to the Treasury Regulations' Use Tax Schedule here at issue, was published in the Federal Register on April 8, 1969, 34 Fed.Reg. 6244 (1969). The Use Tax Schedule itself which, by its terms, was to take effect on July 1, 1969, was published in the Federal Register on May 8, 1969, 34 Fed. Reg. 7448 (1969). That this regulation was promulgated in accordance with the APA is undisputed. *Accord Northern Illinois Gas Co. v. United States, supra,* 743 F.2d at 541 n. 3 (1984).

This being the case, the only issue that remains to be resolved is whether Rev.Rul. 76–294 is a proper interpretation of the equipped for use rule or whether it is an attempt by the IRS to change the operative rule of law through informal means.

The cases cited by plaintiff in support of its position are inapposite. Both cases analyze (1) whether *regulations* were legislative in nature and (2) whether they were properly promulgated. *See, Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); *American Standard, Inc. v. United States,* 220 Ct.Cl. 411, 602 F.2d 256 (1979). As noted above, the *regulation* at issue in this case, which contains the equipped for use rule, was undeniably promulgated in accordance with the Administrative Procedure Act. Plaintiff also has failed to cite a single case holding that a revenue ruling is a legislative rule.

> Generally speaking * * * "regulations," "substantive rules" or "legislative rules" are those which create law, * * * whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means * * *. A substantive rule is one which * * * is intended to implement the statutory structure or the statutory powers of any agency. An interpretive rule is one which does not have the full force and effect of a substantive rule but which is in the form of an explanation of particular terms * * *.

*Gibson Wine Co. v. Snyder,* 194 F.2d 329, 331 (D.C.Cir.1952).

The Federal Circuit held, in *Minnesota Power*, that "the *interpretation* given by IRS to its regulation," Treas.Reg. § 41.4482(b)–1(d), set forth in Rev.Rul. 76–294 is harmonious with the statute itself. *Minnesota Power and Light Co. v. United States, supra.* In light of the Federal Circuit's decision, this Court holds that Rev. Rul. 76–294 merely represented the IRS' explanation of the equipped for use language. As such, it illustrates the "classic example of an interpretive ruling," *Wing v. Commissioner,* 81 T.C. 17, 27 (1983), and is exempt from the notice and comment requirements of the Administrative Procedure Act. *Northern Illinois Gas Co. v. United States, supra. Accord National Muffler Dealers Assoc. v. United States,* 440 U.S. 472, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979); *Eastern Kentucky Welfare Rights Organization v. Simon,* 506 F.2d 1278 (D.C.Cir.1974), vacated on other grounds, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *National Restaurant Assoc. v. Simon,* 411 F.Supp. 993 (D.D.C.1976).

## CONCLUSION

For the reasons discussed above, plaintiff's motion for partial summary judgment is denied. Defendant's cross-motion for summary judgment is granted and the complaint is to be dismissed.

Costs to the prevailing party.